O

# United States District Court
# Central District of California

| | |
|---|---|
| JIM 72 PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>MONTGOMERY CLEARNERS, d/b/a MONTGOMERY CLEANERS & PRESSERS and MONTGOMERY C H; ROBERT B. JASSO; VIOLA JASSO; JOHN W. RICH; FELIPE P. RENDON; RENDON PROPERTIES LLC; and DOES 1–100, inclusive,<br><br>    Defendants. | Case No. 2:15-cv-7543-ODW (FFMx)<br><br>**ORDER DENYING DEFENDANTS FELIPE P. RENDON AND RENDON PROPERTIES, LLC'S MOTION TO DISMISS [15]** |

## I.   INTRODUCTION

Plaintiff Jim 72 Properties, LLC brings suit against multiple defendants, including Felipe P. Rendon and Rendon Properties, LLC (collectively "Rendon"). Plaintiff claims to have a valid and lawful assignment to all rights to bring environmental claims relating to a specific parcel of real estate in Wilmington, California (the "Subject Property"). Rendon argues that the assignment is conditional and not absolute, and therefore Plaintiff lacks standing under Article III of the United States Constitution to pursue this action. For the reasons discussed below, the Court finds that Plaintiff does have standing and **DENIES** Rendon's Motion. (ECF No. 15.)[1]

## II.   FACTUAL BACKGROUND

Plaintiff's case relates to the alleged contamination of a dry cleaning business. The Subject Property is located at 1355 North Avalon Boulevard, Wilmington, California. (Complaint ["Compl."] ¶ 5, ECF No. 1.) Anulfo Estrada and Rosa Estrada ("the Estradas") have owned the property for many years, though neither are parties in this action. (*Id.* ¶ 26; Motion ["Mot."] 1, ECF No. 15.). In May 2013, Plaintiff entered into escrow to purchase the Subject Property from the Estradas. (Request for Judicial Notice ["RJN"] 1, ECF No. 16.) To date, escrow remains open and title is yet to transfer to Plaintiff. (*Id.*)

Rendon owns certain real property located at 1363–1367 North Avalon Boulevard, Wilmington, California, adjacent to the Subject Property. (Mot. 1.) The property located at 1365 North Avalon is a dry cleaning business. (Compl. ¶¶ 11–12.) Sometime during the escrow process, Plaintiff commissioned an environmental study of the Subject Property. (*Id.* ¶ 19.) This environmental investigation included a historical records review and comprehensive soils testing. (*Id.* ¶¶ 19, 22; Mot. 1.) Based on the conclusions set forth in the consultant's report, Plaintiff argues that prior

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

dry cleaning activities performed on the Rendon property before and during Rendon's ownership caused chlorinated solvents to contaminate the soil and groundwater of the Rendon property, which then migrated to the soil and groundwater underneath the Subject Property.  (Compl. ¶¶ 22–25.)

On January 9, 2015, the Estradas and Plaintiff executed an Assignment Agreement ("Agreement") with the intent to assign to Plaintiff "all right, title and interest in any claims or causes of action" held by the Estradas against Rendon and others for contamination of the Subject Property.  (RJN 1.)

Rendon is now moving to dismiss the Complaint for lack of jurisdiction, arguing that Plaintiff holds neither title to the Subject Property nor a perfect, absolute, and complete assignment of rights, and thus lack standing to bring this claim.  (ECF No. 15.)  The parties timely filed an opposition and reply.  (ECF Nos. 20, 21.)  Rendon's Motion is now before the Court for decision.

### III.   LEGAL STANDARD

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court must dismiss a complaint when it lacks subject matter jurisdiction.  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  Where, as here, a defendant makes a facial attack on subject matter jurisdiction, the court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor when determining whether the facts alleged are sufficient to establish federal jurisdiction.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).  Should the plaintiff fail to satisfy every element necessary for subject matter jurisdiction, the Rule 12(b)(1) motion should be granted.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Article III, Section 2, of the United States Constitution restricts the federal

"judicial Power" to the resolution of "Cases" and "Controversies," and this case-or-controversy requirement is met where the plaintiff has standing to bring his or her suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To satisfy Article III standing, a plaintiff must show that (1) he has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868–69 (9th Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). The plaintiff bears the burden of establishing these elements, and standing must be present at the time the action is brought. *Lujan*, 504 U.S. at 561, 570 n.5.

## IV. DISCUSSION

Plaintiff brings claims under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B)[2] ("RCRA"), as well as state law claims for nuisance, negligence, and trespass. Plaintiff seeks damages and injunctive relief. (Compl. ¶¶ 34, 39–45, 51–58, 60–69.)

Because escrow has not closed on the Subject Property and title has not yet been transferred from the Estradas to Plaintiff, Rendon claims that Plaintiff has not suffered an "injury in fact" and therefore lacks standing to bring this suit. (Mot. 5.) Furthermore, Rendon claims that in order for the Assignment Agreement to confer standing on Plaintiff, the assignment must be "absolute in form" and "plainly" "vest the legal title in" the assignee. (*Id.*) Absent an absolute assignment, Rendon argues that all of Plaintiff's claims should be dismissed for lack of jurisdiction.

In response, Plaintiff argues that only title to the claims, not title to the Subject Property, is a prerequisite for standing, and that the Assignment Agreement confers

---

[2] Section 6972(a)(B) authorizes citizen suits under RCRA. Plaintiff here uses the authorizing statute to allege violations of RCRA itself. 42 U.S.C. §§ 6921, *et seq.*

4

absolute title to these claims and thus establishes both an "injury in fact" and Article III standing. (Opp'n 2.)

### A. Estradas May Validly Assign Right to Sue

Plaintiff acknowledges that he does not hold title to the Subject Property. (Comp. ¶ 26.) Because escrow is still open, title has not yet transferred to Plaintiff and the Estradas are the current owners of the Subject Property. (Mot. 1.) However, ownership of the Subject Property is irrelevant to Plaintiff's standing because Plaintiff need only have title to the claims brought in this action, not the property itself. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 284 (2008) (legal effects of an assignment will not be "curtailed by the recital that the assignment was for purposes of suit" (citing *Titus v. Wallick*, 306 U.S. 282, 289 (1939)).

Formally and historically called a "chose in action," the ability to assign one's rights and interests in suit to another has been recognized for centuries. *Sprint*, 554 U.S. at 275, 285 ("We find this history and precedent 'well nigh conclusive' . . . [that suits] by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 777–78 (2000)); *see also Titus*, 306 U.S. at 289 (holding under New York law that a plaintiff had "dominion over the claim for purposes of suit" because the assignment purported to "'sell, assign, transfer and set over' the chose in action" to the assignee (citations omitted)); *Welch v. Mandeville*, 14 U.S. 233, 237 n.a (1816) (noting that common law courts "now consider an assignment of a chose in action as substantially valid"); *Dennie v. Chapman*, 1 Root 113, 115 (Conn. Super. Ct. 1789) (assignee of a nonnegotiable note can bring suit "in the name of the original promisee or his administrator").

### 1. Assignability of RCRA Claim[3]

---

[3] Because the validity of the Assignment Agreement is irrelevant where the claims themselves are unassignable, the Court will assess the assignability of each claim absent briefing by the Parties.

While not all rights to suit are assignable, the causes of action at issue here are. First and foremost, Plaintiff claims that Rendon's dry cleaning business activities have contaminated the soil and groundwater on the Subject Property, and thus violated RCRA. (Compl. ¶ 34.) The question for this Court, then, is whether the statutory claim, with a private right of action, is assignable. The Court finds that RCRA claims are assignable.

Whether an action is assignable is often associated with whether the action would survive the death of a party. *Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.*, No. 95–35238, 1996 WL 344615, at *3 n.5 (9th Cir. June 24, 1996) ("The assignability of a cause of action is by authorities intimately associated with, and in most cases held to depend upon, the same principle as the survival of a cause of action." (quoting *MacLeod v. Stelle*, 43 Idaho 64, 75 (1926)). It logically flows that, if the heirs or legal representatives of a decedent would have sufficient standing to bring claims in their own name for injuries suffered by the deceased, so too could an assignee rightfully bring claims originally suffered by the assignor. *See* Charles E. Clark & Robert M. Hutchins, *The Real Party in Interest*, 34 Yale L.J. 259, 264 (1925) (citation omitted).

The Resource Conservation and Recovery Act does not supply a survivability provision, and therefore federal common law governs the survivability of its claims. *See Berndt v. Cal. Dep't of Corr.*, No. C 03-3174 VRW, 2010 WL 5088220, at *1 (N.D. Cal. Dec. 8, 2010) (citing *Heikkila v. Barber*, 308 F.2d 558, 561 (9th Cir. 1962)). Under federal common law, a claim will not survive a plaintiff's death (and, in turn, would not be assignable) if the claim arises from a statute that is penal in nature, though claims that are largely remedial in nature will survive. *See United States v. Oberlin*, 718 F.2d 894, 896 (9th Cir.1983) (citing *Ex parte Schreiber*, 110 U.S. 76, 80 (1884)); *see also Reiserer v. United States*, 479 F.3d 1160, 1162 (9th Cir. 2007); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir. 2002). However, in light of rampant ambiguity in assessing whether an action is "penal,"

courts apply a three-factor test to determine survivability.[4] *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481, 483 (N.D. Cal. 2004) (internal quotations omitted). "Those factors are: 1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Id.* While courts must assess each factor in turn, the legislative intent behind the law is the dominant factor. *Reiserer*, 479 F.3d at 1165.

To date, no court has assessed the survivability of RCRA claims, though after applying the three-factor test, this Court finds that the toxic waste provisions (and the provisions authorizing citizen suit) of RCRA are primarily remedial, and therefore survivable and assignable.

### a) Individual v. Public Wrongs

Where the purpose of a statute is to redress an individual wrong, it is more likely to have a remedial purpose. *Riggs v. Gov't Emp. Fin. Corp.*, 623 F.2d 68, 72 (9th Cir. 1980). "When considering whether the purpose of the statute is to redress individual wrongs as opposed to deterring public wrongs, courts refer to the Congressional findings and declaration of purpose." *Bracken*, 219 F.R.D. at 484 (citing *James v. Home Const. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir. 1980)). In its findings supporting RCRA, Congress found that "disposal of solid waste and hazardous waste in or on the land without careful planning and management can present a danger to human health and the environment"; that "open dumping is

---

[4] While courts in this district have noted that this three-factor test "simply does not apply" where it is the plaintiff, not the defendant, who is the deceased party, each of those courts have still gone on to discuss the penal vs. remedial analysis. *See Haynes v. R.H. Dyck, Inc.*, No. 206CV-02944-MCE-EFB, 2007 WL 3010574, at *2 (E.D. Cal. Oct. 15, 2007); *Bracken v. Harris & Zide*, L.L.P., 219 F.R.D. 481, 483 (N.D. Cal. 2004). Accordingly, this Court likewise will address the three factors, while also noting that the "general rule is that actions for penalties do not survive the death of the defendant because a deceased defendant is beyond punishment," and that "actions to recompense or compensate a plaintiff do survive the death of the defendant because his estate should compensate for the injury caused by the defendant." *Haynes*, 2007 WL 3010574 at *3.

particularly harmful to health, contaminates drinking water from underground and surface supplies, and pollutes the air and the land"; and that "the placement of inadequate controls on hazardous waste management will result in substantial risks to human health and the environment." 42 U.S.C. § 6901(b)(2)–(5).

While it is clear that RCRA aims to address large-scale environmental harms, it is also abundantly clear that RCRA aims to alleviate the individualized harms people may suffer as a result of toxic waste. Moreover, § 69729a)(1)(B), which authorizes citizen suits and is the operative section supporting Plaintiff's claims, allows any person to commence a civil action on his own behalf against a polluter "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." Again, RCRA's focus remains not just environmental waste clean-up, but also the health of those who have been harmed by toxic waste. Accordingly, the Court finds that RCRA is meant to address individual harms, and is thus remedial.

### b) Recovery Runs to the Individual v. Public

The second factor is closely related to the first, and asks whether the statute provides for individual or public recovery. *Bracken*, 219 F.R.D. at 484 (citing *James*, 621 F.2d at 730)). On its face, the factor weighs in favor of penal, rather than remedial, designation. Under § 6928(g), any person found liable under RCRA will be liable to the United States for civil penalties up to $25,000. The remedy flows to the government, and not the wronged individual.

However, where monetary penalties flow to the government but are not punitive in nature, a statute will be deemed survivable. *See Haynes*, 2007 WL 3010574, at *3 (fines imposed by § 292 of Patent Code are not punitive and therefore survive death of a party). In *Reiserer*, the Ninth Circuit held that penalties under the Internal Revenue Code were intended to be civil, not penal, and that those penalties were not so punitive in purpose so as to render them effectively criminal. 479 F.3d at 1163. Thus, the IRS

provisions at issue were deemed survivable.

Likewise, the RCRA penalties here are intended to reimburse the government for the costs of rectifying environmental degradation—not punish. Such clean-up is exceedingly expensive, and a civil penalty capped at $25,000 is hardly punitive when clean-up costs can skyrocket into the millions. *See* Anthony DePalma, *Love Canal Declared Clean, Ending Toxic Horror*, N.Y. Times (Mar. 18, 2004), http://www.nytimes.com/2004/03/18/nyregion/love-canal-declared-clean-ending-toxic-horror.html?_r=0 (noting that clean-up for the Love Canal section of Niagara Falls, New York, where industrial chemicals oozed through the ground and into basements and schools, took nearly twenty years and cost almost $400 million).

Because "monetary penalties are not typically regarded as punishment," the Court finds that RCRA's civil penalties serve the "remedial goal" of reimbursing the government for the costs associated with investigation of toxic waste and its subsequent clean-up, and are therefore remedial under the second factor. *Haynes*, 2007 WL 3010574, at *3.

### c) Relationship of Recovery to the Harm

Finally, courts must balance the relationship of the available recovery with the harm it intends to alleviate. *Bracken*, 219 F.R.D. at 484. RCRA allows the district court to enjoin a polluting actor and, where appropriate, to impose civil fines. 42 U.S.C. § 6972(a)(2). Injunctive relief is inherently remedial, as it stops the offending behavior in its tracks. *See Zands v. Nelson*, 779 F. Supp. 1254, 1261 (S.D. Cal. 1991) ("Indeed, the legislative intent appears to be to allow citizens to use the citizen suit provisions of RCRA to clean up sites where solid waste disposal may present an imminent and substantial endangerment." (citations omitted)). Moreover, as discussed above, the civil penalties allowed under § 6928(g) are not intended to be penal, but to compensate the government for the costs inherent in investigating and cleaning up hazardous waste.

Because all three factors counsel in favor of survivability, the Court finds that

RCRA is likewise assignable. Plaintiff may validly raise RCRA claims assigned to him.

### 2. Assignability of State Law Tort Claims

Based on a review of California precedent, this Court also finds that the torts of nuisance, trespass, and negligence are assignable. It is well-settled in California that "[a]ssignability of things in action is now the rule; nonassignability the exception.'" *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 393 (1976) (citations omitted). Exceptions to the assignability rule apply to wrongs done to a person, his reputation, his feelings, or contracts of a purely personal nature such as those for marriage. Clark & Hutchins, *supra*, at 264 (citing *Rued v. Cooper*, 109 Cal. 682, 693 (1893)). However, where claims arise out of a violation of a property right or a wrong involving personal or real property, the injured party may assign those claims. *Goodley*, 62 Cal. App. 3d at 394 (citations omitted); *see also Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1009 (2014). Because the Estradas assigned tort claims for injury to real property, these claims are also transferable in a chose in action.

### B. Whether Agreement Properly Assignment Rights to Suit

The next question for this Court, then, is whether the Agreement between Plaintiff and the Estradas is a valid assignment of the right to sue. When assessing whether an assignment is properly made, "the intention of the parties as manifested in the instrument is controlling." *Cal. Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd.*, 203 Cal. App. 4th 1328, 1335 (2012); *see also Klamath-Lake Pharm. V. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 2006). To be effective, an assignment "must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person." *Cal. Ins.*, 203 Cal. App. 4th at 1335–36. A contract must also be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting. *Id.* at 1336.

> The Assignment at issue here reads:
>
> Assignor hereby assigns and transfers to Assignee all of their right, title and interest in any claims or cause of actions Assignor may have against the owner or any previous owners of the [Rendon property] relating to the PCE Contamination. In connection with such assignment, Assignee hereby assigns to Assignor any and all rights to bring a complaint or pursue a claim relating to . . . [Subject Property] . . .

(RJN 1.) It is abundantly clear that the Estradas had every intention of immediately transferring the right to sue Rendon for the injuries resulting from the alleged soil contamination—the Agreement specifically names the claims related to the causes of action alleged in the case at bar and the contract sets no conditions precedent on Plaintiff's ability to exercise these rights.

The Estradas conferred to Plaintiff "all of their right, title and interest," and "any and all rights" in any litigation related to environmental contamination on the Rendon property. Reading the contract to "give effect to the mutual intention of the parties," *Cal. Ins.*, 203 Cal. App. 4th at 1336, it is indisputable that the Estradas intended to transfer all interest in any claims to Plaintiff. Thus, Plaintiff owns the claims alleged in the Complaint and therefore has standing to bring suit. *Lujan*, 504 U.S. at 561, 570 n.5.

### C. The Assignment's Conditions are Irrelevant to Article III Standing

The crux of Rendon's arguments in support of the Rule 12(b)(1) claim rests on the notion that the Assignment Agreement assigns Plaintiff the right to suit only so long as Plaintiff buys, or intends to buy, the Subject Property, and that this contingent assignment is insufficient to confer standing. (Mot. 6–7.) Because the mere possibility that a party may lose standing at a later time does not negate standing at the outset of a claim, the Court finds Rendon's concerns unsubstantiated.

The Agreement further reads, in pertinent part:

> The term of this Assignment shall commence on the date of execution

11

hereof and shall continue so long as Assignee shall purchase the 1355 Property or continue to have the right to purchase the 1355 Property pursuant to the Purchase Agreement as amended and shall only terminate in the event that Assignee elects not to purchase the 1355 Property or its rights under the Purchase Agreement . . .

IN THE EVENT THAT THE ASSIGNEE SHALL NOT ELECT TO PURCHASE THE 1355 PROPERTY, ASSIGNOR SHALL HAVE THE OPTION OF (1) INSTRUCTING ASSIGNEE TO DISMISS ANY LAWSUIT FILED BY ASSIGNEE PURSUANT TO THIS AGREEMENT (IN WHICH CASE, ASSIGNEE SHALL IMMEDIATELY DISMISS ANY SUCH LAWSUIT WITHOUT PREJUDICE) OR (2) CONTINUING THE LAWSUIT.

(RNJ 2.). Rendon argues that the assignment will only become absolute should Plaintiff purchase the Subject Property, and that the conditional nature of the Agreement invalidates Plaintiff's standing claims. (Mot. 6–7.) Because escrow has not closed, Rendon claims the Assignment is not complete and Plaintiff lacks standing. (*Id*. 6.)

For the Court to decide the issue in Rendon's favor and bar Plaintiff's suit is to both enforce a contract interpretation that flies in the face of the clear language of the Agreement and to ignore common sense. First and foremost, the Agreement immediately transfers ownership of all contamination claims relating to the Subject Property, and the fact that the ownership claim would terminate should Plaintiff decline to purchase the Subject Property is irrelevant. *See Spanish Inn, Inc. v. Goodell*, No. D066966, 2015 WL 1932654, at *3 (Cal. Ct. App. Apr. 29, 2015) (finding that assignment agreement clause barring exercise of rights until loan default did not render the agreement conditional, and that clause merely limits the "timings of the [assignee's] exercise of those rights"). So long as the transfer itself was absolute,

any ancillary terms between the assignor and the assignee will not render the immediate transfer itself void:

> It is now settled by a great preponderance of authority . . . that if the assignment, whether written or verbal, of anything in action is absolute in its terms, . . . any contemporaneous collateral agreement, . . . or by which his title, in any other similar manner, is partial or conditional, does not render him any the less the real party in interest: he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor.

*Grant v. Heverin*, 77 Cal. 263, 265 (1888).

Because the existence of a condition in the Agreement does not itself render the assignment invalid, what matters is that Plaintiff was still in escrow at the time of suit, and that Plaintiff remains in escrow today. Any legitimate concerns that the Agreement's conditional terms may raise are alleviated by the simple fact that those conditions were not present at the time Plaintiff brought this suit—and standing is determined at the commencement of the litigation. *Lujan*, 504 U.S. at 507 n.5. Should the real estate deal ultimately fall through while this suit is pending, the claims do not disappear, but rather return to the Estradas, who can elect to continue litigating or dismiss the claims altogether.

Furthermore, Rendon's argument must fail because it ignores the foundations of standing and the chose in action itself. Article III does not demand, at filing, that a plaintiff show that he or she will have standing for the entire duration of the litigation—no person can promise this, and even asking the question ignores the real chance of the unforeseeable. Plaintiff has standing now and, unless Plaintiff leaves escrow or fails to purchase the Subject Property, will continue to have standing. Plaintiff is the master of its own destiny.

Finally, Rendon's argument asks this Court to render all assignations void if the assignment is indefinite. Yet our most common assignments—between trustees and

trusts, guardians ad litem and wards, executors and estates—are not indefinite. Trustees change, wards grow up or leave the state's protection, and executors may be replaced after familial infighting. Not all assignments are permanent, and to require permanency would leave too many without standing in our courts.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss and finds that Plaintiff Jim 72 Properties, LLC has standing to bring claims under the Resource Conservation and Recovery Act and for all related state law claims. (ECF No. 15.)

**IT IS SO ORDERED.**

December 16, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**